IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

JASON B. TARTT, et al.,

      Plaintiffs,

v.                         CIVIL ACTION NO. 1:22-00327

DALTON T. MARTIN, et al.,

      Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the court is defendants' partial motion to dismiss. ECF No. 10. For the reasons explained below, the motion is **DENIED**.

## I.   **Background**[1]

On August 7, 2020, two McDowell County, West Virginia, Sheriff's Deputies, defendants Dalton T. Martin and Jordan A. Horn, questioned a retired African American couple, plaintiffs Donnie and Ventriss Hairston, about suspected marijuana plants being grown several properties away from where the Hairstons resided. See ECF No. 3 at ¶¶ 6-8, 11-12, 14, 27. The questioning occurred outside the Hairstons' residence, which they rented from plaintiff Jason Tartt who is also an African

---

[1] This factual background is based on plaintiffs' allegations, which the court accepts as true solely for purposes of this motion. See, e.g., <u>Merriweather v. Kijakazi</u>, No. 1:21-00391, 2022 WL 4813305, at *1 (S.D.W. Va. Sept. 30, 2022).

American.  See id. at ¶ 16.  When the officers first arrived at
the residence, the Hairstons anticipated a friendly encounter
and nicely greeted them.  See id. at ¶ 13.  The Hairstons,
however, soon realized that it was not a friendly encounter when
the officers appeared agitated, questioned the Hairstons as to
whether they grew marijuana, and searched the exterior of their
home.  See id. at ¶¶ 13, 16.  As Officer Martin described it in
his police report, "[u]pon our arrival we incountered [sic] by
two elderly subjects who was [sic] on the porch and asked them
if they growed [sic] marijuana and they stated 'No'.".  Id. at ¶
12.

    During the encounter, the Hairstons summoned their landlord
and neighbor, Mr. Tartt, because they felt threatened by the
officers and wanted to notify him that the officers were
investigating his property.  See id. at ¶ 16.  When Mr. Tartt
arrived, he joined the Hairstons on their front porch and told
the officers his name when they asked.  See id. at ¶ 18.

    As the situation progressed, the officers grew more
agitated and demanding, and plaintiffs, none of whom had any
criminal history, quickly realized that the officers had no
legitimate reason to suspect them of any wrongdoing or to be
angry with them.  See id. at ¶¶ 14-15, 19.  Plaintiffs suspected
that the officers were racially profiling them and violating
their civil rights.  See id. at ¶ 19.  Because plaintiffs were

"in a rural area with a history of police misconduct and official corruption," they felt that the officers endangered them.  Id.

Body camera footage of the interaction captured Mrs. Hairston expressing her fear to the officers and her statement that "in the season we're living in," she would like to know the officers' names.[2]  Id. at ¶ 20.  Officer Martin mockingly responded, "I'll see if I can find my name" and never provided it.  Id.  The officers then became angrier and demanded Mr. Tartt's "name, date of birth and such."  Id. at ¶ 24.  But Mr. Tartt decided not to provide more than his name because, based on his experience as a former Military Police officer, he believed the officers were retaliating against him and the Hairstons for complaining about their treatment.  See id. at ¶¶ 25, 28-29.  To the shock of plaintiffs, Officer Martin entered the front porch and seized Mr. Tartt through "physical force . . . verbal intimidation and threats of violence."  See id. at ¶ 30.  Officer Martin also physically prevented the Hairstons from filming the incident and shoved them into their home, partially entering the home in the process.  See id. at ¶ 31.

---

[2]  According to the complaint, "Mrs. Hairston was clearly referring to the national proliferation of incidents of police misconduct—especially those involving white police officers and African American victims, such as the George Floyd and Breonna Taylor incidents, among many others."  Id. at ¶ 20 n.1.

The officers arrested Mr. Tartt and charged him with
obstruction of law enforcement officers.  See id. at ¶¶ 32-33.
On their way to the police station, Officer Martin relayed the
events to his supervisors several times.  See id. at ¶ 32.  A
prosecuting attorney later dropped the obstruction charge
against Mr. Tartt because the officers failed to appear in court
as witnesses.  See id. at ¶ 34.

The Based on these allegations, the Hairstons and Mr. Tartt
sued (1) Officers Martin and Horn in their individual
capacities, (2) Officers Martin and Horns' alleged supervisor,
James "Boomer" Muncy, in his individual capacity, and (3) the
McDowell County Commission (the "County Commission").  See id.
at ¶¶ 7-10.  Plaintiffs allege various claims under 42 U.S.C. §
1983 against Officers Martin and Horn for alleged constitutional
violations, including unlawful seizure of Mr. Tartt, malicious
prosecution of Mr. Tartt, unlawful search and seizure of the
Hairstons, and unlawful retaliation against plaintiffs for
exercising their free speech rights.  See id. at Counts I-IV.
Plaintiffs also claim that Officers Martin and Horn conspired to
deprive them of their equal protection rights in violation of 42
U.S.C. § 1985.  See id. at Count V.  Plaintiffs bring § 1983
claims against Officer Muncy under a "supervisory liability"
theory and against the County Commission for allegedly
implementing an unconstitutional policy or custom that caused

4

their alleged constitutional injuries.  See id. at Counts VI-
VII.

Defendants filed this motion to dismiss under Rule 12(b)(6)
of the Federal Rules of Civil Procedure.  See ECF No. 10.  They
challenge the sufficiency of plaintiffs' allegations only as to
their (1) § 1983 claim against the County Commission, (2) § 1985
conspiracy claim against Officers Martin and Horn, and (3)
supervisory liability claim against Officer Muncy.  See ECF No.
11.  They do not contest the sufficiency of plaintiffs'
allegations for their § 1983 claims against Officers Martin and
Horn.

## II.  Legal Standard

"The purpose of a Rule 12(b)(6) motion is to test the
[legal] sufficiency of a complaint; importantly, [a Rule
12(b)(6) motion] does not resolve contests surrounding the
facts, the merits of a claim, or the applicability of defenses."
Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir.
1999) (citations and internal quotation marks omitted).  A Rule
12(b)(6) defense asserts that even if all the factual
allegations in a complaint are true, they remain insufficient to
establish a cause of action.  This court is also mindful that
"[w]hether a particular ground for opposing a claim may be the
basis for dismissal for failure to state a claim depends on
whether the allegations in the complaint suffice to establish

5

that ground, not on the nature of the ground in the abstract."
Jones v. Bock, 549 U.S. 199, 215 (2007).

Accordingly, Federal Rule of Civil Procedure 8(a)(2)
requires that "a pleading . . . contain a 'short and plain
statement of the claim showing that the pleader is entitled to
relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 677—78 (2009)
(citing Fed. R. Civ. P. 8(a)(2)). The purpose of Rule 8(a)(2)
is to ensure that "the defendant [receives] fair notice of what
the . . . claim is and the grounds upon which it rests." Conley
v. Gibson, 355 U.S. 41, 47 (1957). A plaintiff must allege
"enough facts to state a claim to relief that is plausible on
its face" and "raise a right to relief above the speculative
level." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599,
615 n.26 (4th Cir. 2009).

The United States Supreme Court has maintained that
"[w]hile a complaint . . . does not need detailed factual
allegations, . . . a plaintiff's obligation to provide the
grounds of his entitle[ment] to relief requires more than labels
and conclusions, and a formulaic recitation of the elements of a
cause of action will not do." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 555 (2007) (citations and internal quotation marks
omitted). The court need not "accept as true unwarranted
inferences, unreasonable conclusions, or arguments." E. Shore
Mkts., Inc. v. J.D. Assocs. Ltd P'ship, 213 F.3d 175, 180 (4th

6

Cir. 2000).  Courts must also take care to avoid confusing the
veracity or even accuracy underlying the allegations that a
plaintiff has leveled against a defendant with the allegations'
likelihood of success.  While "the pleading must contain
something more . . . than . . . a statement of facts that merely
creates a suspicion [of] a legally cognizable right of action,"
5 C. Wright & A. Miller, Federal Practice and Procedure § 1216
(3d ed. 2004), "assum[ing]" of course "that all the allegations
in the complaint are true (even if doubtful in fact)," Twombly,
550 U.S. at 555, it is also the case that "Rule 12(b)(6) does
not countenance . . . dismissals based on a judge's disbelief of
a complaint's factual allegations." Neitzke v. Williams, 490
U.S. 319, 327 (1989).  Therefore, courts must allow a well-
pleaded complaint to proceed even if it is obvious "that a
recovery is very remote and unlikely." Scheuer v. Rhodes, 416
U.S. 232, 236 (1974).

**III. Discussion**

**a.   § 1983 Claim Against County Commission**

Plaintiffs seek redress from the County Commission for
their alleged constitutional injuries.  "Section 1983 provides a
federal cause of action to redress constitutional harms
committed under color of state law." Smith v. Travelpiece, 31
F.4th 878, 882-83 (4th Cir. 2022) (citing 42 U.S.C. § 1983)).
The statute subjects "[e]very person" to civil liability to

redress such harms.  42 U.S.C. § 1983.  "Every person" includes

municipalities and other local government units.  See Monell v.

Dep't of Soc. Serv. of City of New York, 436 U.S. 658, 690

(1978).  The County Commission is considered a municipality for

purposes of § 1983 claims.  See Revene v. Charles Cty. Comm'rs,

882 F.2d 870, 874 (4th Cir. 1989).

Plaintiffs may not hold the County Commission liable on a

respondeat superior theory for the alleged acts of the

individual officers.  See Monell, 436 U.S. at 691.  Instead, to

state a valid § 1983 claim against the County Commission,

plaintiffs must plausibly allege that their claimed

constitutional injuries arose because the individual officers

implemented or executed a "policy statement, ordinance,

regulation or decision officially adopted and promulgated by

[the County Comission's] officers[,]" in this case, the Sheriff.

Id. at 690; see also Frye v. Lincoln Cty. Comm'n, No. 2:20-cv-

00403, 2021 WL 243864, at *4 (S.D.W. Va. Jan. 25, 2021) ("The

Fourth Circuit has recognized that 'in the realm of county law

enforcement,' it is the 'sheriff [who] is the duly delegated

policy maker for the county.'" (quoting Revene, 882 F.2d 874)).

Customs include a "governmental 'custom' even though such a

custom has not received formal approval through the body's

official decisionmaking channels."  Monell, 436 U.S. at 691.

Plaintiffs can establish a policy or custom through one of four
means:

> (1) [T]hrough an express policy, such
> as a written ordinance or regulation; (2)
> through the decisions of a person with final
> policymaking authority; (3) through an
> omission, such as a failure to properly
> train officers, that manifest[s] deliberate
> indifference to the rights of citizens; or
> (4) through a practice that is so persistent
> and widespread as to constitute a custom or
> usage with the force of law.

Howard v. City of Durham, 68 F.4th 934, 952 (4th Cir. 2023).

In this case, plaintiffs allege that the County Commission,
through the Sheriff's Office, implemented an unconstitutional
express policy and also established unconstitutional customs
through omissions and widespread practices of that office.  See
ECF No. 3 at ¶ 86.  Defendants, however, argue that these
allegations are insufficient to state a § 1983 claim because
plaintiffs allege only conclusory allegations of a specific
policy or practice and do not attribute that policy or practice
to the County Commission, the final policy maker.  See ECF No.
11 at 7.

The court begins by addressing plaintiffs' allegations that
the individual officers acted according to an express policy of
the County Commission.  Plaintiffs allege that the County
Commission had a "policy and practice of authorizing general
searches of the curtilage of homes in the absence of probable

cause . . . ." ECF No. 3 at ¶ 86. Plaintiffs do not cite to a written policy or otherwise provide factual support for the existence of such express policy. The court, therefore, finds plaintiffs' allegations of an express policy insufficient. See, e.g., Inser v. City of Elkins, No. 2:21-CV-27, 2022 WL 1750630, at *4 (N.D.W. Va. May 31, 2022) (finding insufficient allegations of express policy where "[t]he Complaint includes only a conclusory statement that such a policy exists and then cites the facts at issue in this case."). The court next considers plaintiffs' allegations that the individual officers acted according to unofficial customs of the County Commission.

Plaintiffs allege that the County Commission established unconstitutional customs that caused the alleged constitutional injuries because (1) the County Commission knew of prior, similar incidents of Sheriff's Deputies violating individuals' constitutional rights, see ECF No. 3 at ¶ 89, (2) the County Commission knew of the specific incident and did nothing to prevent the subsequent prosecution of Mr. Tartt or to prevent future incidents, see id. at ¶¶ 87, 90, and (3) Officer Martin served as Officer Horn's supervisor and used the incident as "field training" for him, id. at ¶ 88.

These theories represent plaintiffs' efforts to plead a "custom by condonation." Bonner v. McDowell Cty. Comm'n, No. 1:21-00666, 2023 WL 2701427, at *3 (S.D.W. Va. Mar. 29, 2023)

10

(cleaned up).   In other words, plaintiffs allege that the County
Commission condoned the unconstitutional behavior, thereby
making it customary.   "Prevailing under such a theory is no easy
task." Id.   To do so, plaintiffs must prove (1) a persistent
and widespread practice of municipal officials of a duration and
frequency indicating the policy makers (2) had actual or
constructive knowledge of the conduct, and (3) failed to correct
it due to their "deliberate indifference." Id. (citing Spell v.
McDaniel, 824 F.2d 1380, 1386-91 (4th Cir. 1987)).   While
plaintiffs must ultimately prove these elements, they must only
plausibly allege them at this stage; proving a policy or custom
under Monell is quite difficult, but pleading one is a lower
burden.   See Owens v. Baltimore City State's Attorneys Office,
767 F.3d 379, 403 (4th Cir. 2014).

    This court recently found that a plaintiff alleged a valid
§ 1983 claim against a county commission under Monell because
(1) the county commission knew of similar alleged constitutional
violations but failed to address the cause of them, and (2)
failed to intervene to protect the plaintiff from the alleged
constitutional violation.   See Bonner, No. 1:21-00666, 2023 WL
2701427, at *3-4.   The court accepted the general allegations of
past events as true for purposes of the motion and, therefore,
found that the plaintiff alleged a valid Monell claim.   See id.
at *4 (finding that the plaintiff's allegations "that municipal

officials have used excessive force on multiple occasions in the
recent past, which the court must accept as true, plausibly
support[s] his Monell claim because allegations of multiple
instances of the same constitutional violation can establish a
persistent, widespread pattern of practice that forms the basis
of an impermissible custom.") (quoting Daniels v. City of
Charleston, No. 2:20-cv-00779, 2021 WL 3624696, at *5 (S.D.W.
Va. Aug. 16, 2021)).

Like Bonner, plaintiffs allege that the County Commission
knew of and condoned prior instances of similar unconstitutional
behavior and that it failed to correct the issues to prevent
plaintiffs' alleged constitutional injuries.  These allegations
alone may satisfy the pleading standard for a Monell claim,
because "[t]he recitation of facts need not be particularly
detailed, and the chance of success need not be particularly
high." Owens, 767 F.3d at 403 (citing Iqbal, 556 U.S. at 678).
Plaintiffs, however, also allege that (1) Sheriff's Office
supervisors knew of the allegedly unconstitutional conduct as it
transpired, (2) that the Sheriff's Office failed to stop the
allegedly unlawful prosecution of Mr. Tartt, despite this actual
knowledge, and (3) that Officer Martin trained Officer Horn in
these unconstitutional practices.  If plaintiffs prove these
allegations, a jury could find that the practices were customary
of the Sheriff's Office, thereby establishing the County

12

Commission's liability.  See, e.g., Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987) ("Municipal fault for allowing such a developed 'custom or usage' to continue requires (1) actual or constructive knowledge of its existence by responsible policymakers, and (2) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices."); see also Semple v. City of Moundsville, 195 F.3d 708, 713 (4th Cir. 1999) ("In order for a municipality to be liable pursuant to § 1983 under a theory of deficient training, those deficiencies in police training policies that result from policymaker fault must rise to at least the degree of deliberate indifference to or reckless disregard for the constitutional rights of persons within police force jurisdiction.").

For these reasons, plaintiffs adequately allege a § 1983 against the County Commission.[3]

**b.   § 1985 Conspiracy Claim**

Claims brought under 42 U.S.C. § 1985 allow individuals to recover civil damages from persons that conspire to deprive the individuals of equal protection under the law.  See Bray v.

---

[3] Defendants also argue that plaintiffs fail to attribute this custom to the County Commission.  Plaintiffs, however, attribute it to the county Sheriff's Office, which is, as discussed above, considered a final policy maker for the County Commission in this respect.  Plaintiffs therefore attribute the alleged custom to the County Commission.

<u>Alexandria Women's Health Clinic</u>, 506 U.S. 263, 268 (1993)

(quoting <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971)).  To

establish a § 1985 conspiracy claim, plaintiffs must prove four

elements:

> (1) a conspiracy of two or more
> persons, (2) who are motivated by a specific
> class-based, invidiously discriminatory
> animus to (3) deprive the plaintiff of the
> equal enjoyment of rights secured by the law
> to all, (4) and which results in injury to
> the plaintiff as (5) a consequence of an
> overt act committed by the defendants in
> connection with the conspiracy.

<u>Unus v. Kane</u>, 565 F.3d 103, 126 (4th Cir. 2009) (quoting <u>Simmons</u>

<u>v. Poe</u>, 47 F.3d 1370, 1376 (4th Cir. 1995)).  These elements

require that "there must be some racial, or perhaps otherwise

class-based, invidiously discriminatory animus behind the

conspirators' action."  <u>Alexandria Women's Health Clinic</u>, 506

U.S. at 268-69 (quoting <u>Breckenridge</u>, 403 U.S. at 102).

Plaintiffs claim that Officers Martin and Horn "conspired

for the purpose of depriving . . . plaintiffs of the equal

protection of the laws of the United States[,]" ECF No. 3 at ¶

79, because the officers suspected plaintiffs of growing

marijuana simply because they are African Americans and lived on

the street where someone allegedly grew marijuana.  <u>See</u> <u>id</u>. at ¶

80.  Plaintiffs argue that a factfinder could infer a

discriminatory animus from this incident because the officers

knew of only plaintiffs' race and had no other cause for

14

suspicion when the officers confronted plaintiffs, searched the
Hairstons' property, and arrested Mr. Tartt.  See ECF No. 13 at
10-11.  Defendants, however, ask the court to dismiss this
claim, challenging only the sufficiency of plaintiffs'
allegations related to the first element of a § 1985 claim:
that Officers Martin and Horn formed a conspiracy.  See ECF No.
11 at 10.

A conspiracy claim under § 1985 requires "an agreement or a
meeting of the minds by [the] defendants to violate the
[plaintiff's] constitutional rights."  A Soc'y Without A Name v.
Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Simmons, 47
F.3d at 1377).  The standard required to prove a § 1985
conspiracy is "relatively stringent."  Simmons, 47 F.3d at 1377.
These claims rarely survive the summary judgment stage:

> [The Fourth Circuit] has rarely, if
> ever, found that a plaintiff has set forth
> sufficient facts to establish a section 1985
> conspiracy, such that the claim can
> withstand a summary judgment motion. Indeed,
> [the court has] specifically rejected
> section 1985 claims whenever the purported
> conspiracy is alleged in a merely conclusory
> manner, in the absence of concrete
> supporting facts.

Id.  But this burden is necessarily lower at the pleading stage:
"[T]he nature of conspiracies often makes it impossible to
provide details at the pleading stage and . . . the pleader
should be allowed to resort to the discovery process and not be

subject to dismissal of his complaint." Brever v. Rockwell
Int'l Corp., 40 F.3d 1119, 1126 (10th Cir. 1994) (citing 5 C.
Wright & A. Miller, Federal Practice & Procedure, § 1233, at 257
(2d ed. 1990)).  To establish a civil rights conspiracy,
plaintiffs need not identify an express agreement; they may
establish the conspiracy through circumstantial evidence showing
that the defendants acted jointly in concert toward the same
conspiratorial objective.  See, e.g., Hinkle v. City of
Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996).

        In this case, plaintiffs do not allege an express agreement
between Officers Martin and Horn, nor would they likely have
evidence of any such agreement before the discovery process.
Instead, plaintiffs put forth allegations that if proven,
represent circumstantial evidence that the officers acted in
concert to deprive plaintiffs of equal protection under the law.
According to plaintiffs' allegations, Officers Martin and Horn
acted jointly to unlawfully seize the Hairstons and search their
home, to unlawfully arrest Mr. Tartt, and to unlawfully
retaliate against plaintiffs for asserting their constitutional
rights.  Also, according to those allegations, the officers
suspected plaintiffs of wrongdoing solely because of their race
and attenuated proximity to the alleged marijuana plants.  These
allegations, taken as true, support a plausible inference that
the officers acted in concert to discriminate against plaintiffs

16

because of their race.  Plaintiffs, therefore, sufficiently
allege a meeting of the minds between Officers Horn and Martin.

Plaintiffs allege a valid § 1985 claim.

**c.  Supervisory Liability Claim**

Under specific circumstances, a plaintiff may sue a
supervisory official for constitutional injuries inflicted by
his subordinates.  See Shaw v. Stroud, 13 F.3d 791, 798 (4th
Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir.
1984)).  Although this is the case, the term "supervisory
liability" is a misnomer.  See King v. Riley, 76 F.4th 259, 269
(4th Cir. 2023) (citing Iqbal, 556 U.S. at 677).  Such liability
is not premised upon respondeat superior but upon "a recognition
that supervisory indifference or tacit authorization of
subordinates' misconduct may be a causative factor in the
constitutional injuries they inflict on those committed to their
care."  Stroud, 13 F.3d at 798 (quoting Porter, 737 F.2d at 372-
73).  In other words, a supervisor is liable only for his own
misconduct, but he may commit misconduct if:  (1) the supervisor
knew of the subordinates' misconduct and its pervasive and
unreasonable risk of constitutional injury, (2) the supervisor's
response to that knowledge demonstrates deliberate indifference
to the risk of constitutional injury or a tacit authorization of
the conduct, and (3) there is an "affirmative causal link"
between the supervisor's inaction and the plaintiff's

17

constitutional injury.  See Timpson v. Anderson Cty.
Disabilities and Special Needs Bd., 31 F.4th 238, 257 (4th Cir.
2022) (citing Stroud, 13 F.3d at 799).

In any event, a supervisor must possess more than "mere
knowledge" that his subordinates are engaged in unconstitutional
conduct.  Riley, 76 F.4th at 269.  A complaint must contain
specific allegations of each individual's conduct and state of
mind, and at the summary judgment stage, a plaintiff must offer
evidence to support the allegations.  See id.  When a plaintiff
alleges a supervisory liability claim, they assume a heavy
burden of proof that is not easily satisfied.  See Timpson, 31
F.4th 258 (citing Porter, 737 F.2d 373).

In this case, plaintiffs allege (1) that Officer Muncy
supervised Officers Martin and Horn when he served as Chief
Deputy and later as Sheriff, see ECF No. 3 at ¶ 94, (2) that
Officer Muncy knew of a pattern of unconstitutional acts by his
subordinates, see id. at ¶ 96, (3) that Officers Martin and Horn
kept their supervisors apprised of their interaction with
plaintiffs as the allegedly unconstitutional events unfolded,
see id. at ¶ 32, (4) that Officer Muncy was "deliberately
indifferent in failing to train and/or supervise employees[,]"
id. at ¶ 98, and (5) that Officer Muncy's alleged misconduct
caused plaintiffs' alleged constitutional injuries, see id. at ¶
99.  Defendants, however, ask the court to dismiss this

18

supervisory liability claim, arguing that plaintiffs "have not alleged any specific factual information regarding [Officer] Muncy's knowledge or response."  ECF No. 11 at 11.

These allegations, if proven, establish that Officer Muncy knew that Officers Martin and Horn deprived plaintiffs of their constitutional rights and had done so to other individuals. They also establish that Officer Muncy was deliberately indifferent to or tacitly approved the deprivation of the alleged victims' constitutional rights by failing to intervene either to prevent the malicious prosecution of Mr. Tartt or to prevent the entire incident from occurring.  If true, these allegations make Officer Muncy's alleged inaction an affirmative cause of plaintiffs' alleged constitutional injuries. Plaintiffs, therefore, plausibly allege every element of a supervisory liability claim against Officer Muncy.  While these allegations may be difficult to prove, they are sufficient to state a claim upon which relief may be granted.  See, e.g., Hall v. Putnam Cty. Comm'n, 637 F.Supp.3d 381, 400 (S.D.W. Va. 2022) ("While Plaintiffs will need to further support the facts asserted in the Complaint, as of now they would be sufficient to allege supervisor liability against the specific supervisor(s) of Defendant Deputies for the limited purposes of plausibility pleading."); Braley v. Thompson, No. 2:22-cv-00534, 2023 WL 2351881, at *6 (S.D.W. Va. Mar. 3, 2023) (denying motion to

dismiss because plaintiff alleged deputies used excessive force on prior occasions, that the supervisor knew of these incidents, and that supervisors failed to intervene); Braswell v. Jividen, No. 2:20-cv-00872, 2021 WL 5890667, at *4-5 (S.D.W. Va. Dec. 13, 2021) (denying motion to dismiss because plaintiff alleged that supervisors knew of prior improper behavior and did not address it); Gold v. Joyce, No. 2:21-cv-00150, 2021 WL 2593804, at *9 (S.D.W. Va. June 24, 2021) (denying motion to dismiss supervisory liability claim because plaintiff alleged that supervisor oversaw subordinates, directed some of their actions, and was an affirmative causal link to the constitutional injury).

Plaintiffs adequately allege a supervisory liability claim.

**IV.  Conclusion**

For the above reasons, defendants' motion to dismiss (ECF No. 10) is **DENIED**.  The Clerk is directed to send a copy of this Memorandum Opinion to counsel of record.

**IT IS SO ORDERED** this 21st day of September, 2023.

ENTER:

David A. Faber
Senior United States District Judge